UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BANKFIRST,
        Plaintiff,

                                                                       Case No.  1:08-cv-643

-v-

                                                                       HONORABLE PAUL L. MALONEY

CARPENTER LAKE DEVELOPMENT, INC.,
CARPENTER RIDGE, INC.,
DOUBLE JJ RESORT RANCH, INC.,
OUTDOOR RESOURCES, INC.,
AMERICAN APPALOOSAS, INC.,
ROBERT LIBSITZ, in his individual capacity,
and WALTER WOJACK as assignee
of COMERICA BANK
        Defendants.

## AMENDED ORDER DENYING DEFENDANTS' EMERGENCY MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

This Court has before Defendants' Emergency Motion (Dkt. No. 14) to Modify the Temporary Restraining Order.[1]  As ordered by the Court, Plaintiff filed a response. (Dkt. No. 17). Upon review of the motions, briefs, exhibits and relevant authority, this Court finds oral argument on the emergency motion unnecessary.  W.D. MICH. L.CIV.R. 7.3(d).

Defendants advance two reasons in support of their motion.  First, Defendants argue the Temporary Restraining Order requires them to deposit funds with the Court to which Plaintiff is not entitled.  Defendants assert the terms of the Forbearance Agreement gives Plaintiff a right to "Festival Income" and further defines that phrase by describing the monies payable to Defendants under the "Festival X Event Agreement."  Defendants contend Plaintiff has no right to the revenue

---

[1] The motion was filed by counsel representing Defendants Carpenter Lake Development, Carpenter Ridge, Double JJ Ranch Resort and OUTDOORresources.

generated during the Rothbury Music Festival from room rentals, water park, golf course, special events, and bar and restaurant sales. Second, Defendants argue if they are forced to deposit those funds, they would be unable to pay vendors who provided goods and services during the festival or pay the vendors who are necessary to continue the day-to-day operation of the resort.

Plaintiff disagrees with Defendants' interpretation of the Forbearance Agreement. Plaintiff further finds support for the existing terms of the Temporary Restraining Order in various loan agreements between the parties.

Defendants' Emergency Motion is DENIED. The Court is without the benefit of extensive briefing on the appropriate interpretation of all the relevant agreements entered into by the parties. For the purposes of issuing the Temporary Restraining Order and ruling on Defendants' Emergency Motion, this Court concludes the Forbearance Agreement does not clearly limit "Festival Income" as those revenue streams outlined in the "Festival X Event Agreement." Section 12 of the Forbearance Agreement provides

> 12. <u>Rothbury Festival</u>. Borrower and each of the Guarantors agrees that all income generated by the Resort Properties in connection with the hosting of the 2008 Rothbury Festival ("Festival Income") (including, without limitation, the Site Guarantee, the Bonus, the Concession Revenue sharing payments and other fees and payments payable to OUTDOOResources, or any Borrower or Guarantor or any affiliate of them, under that certain Festival X Event Agreement dated October 1, 2007 among Madison House Presents LLC, AEG Live Productions, LLC and OUTDOOResources) shall be paid in the following order of priority: (a) first, to fund the payments due to Lender under Section 11(a)(i) hereof; and (b) the remaining Festival Income shall be paid (i) fifty percent (50%) to Lender, to be applied first, to unpaid accrued interest under the Loan Documents and then to outstanding principal and (ii) fifty percent (50%) shall be deposited into Borrower's Operating Accounts and used to pay operating costs of the Resort Properties as set forth in the Budget, and with the consent of Lender (which may be granted or denied in Lender's sole discretion), to fund settlement payments with mechanic's lien claimants and trade creditors. All income generated by any other special event or festival held on the grounds of the Resort Properties, shall be accounted for in the Monthly Cash Flow

>   statements delivered to Lender and any Cash Flow attributable thereto shall be disbursed in the manner set forth in Section 11 above.

(Dkt. No. 15-2, Exhibit A to Defendants' Motion - Forbearance Agreement).

The Forbearance Agreement consistently defines key words and phrases prior to the introduction of the phrase in parentheses and quotation marks, rather than after the phrase is introduced in the document. As an example, the Recitals portion of the Forbearance Agreement states in paragraph A

>   Borrower and Marshall Investments Corporation ("Original Lender") are parties to that certain Construction Loan Agreement dated August 15, 2005, as amended by that certain First Amendment to Construction Loan Agreement dated August 31, 2006, (collectively, the "Loan Agreement") pursuant to which Original Lender disbursed a certain construction loan to Borrower ("Loan") in connection with the development of the Resort Properties (hereafter defined).

(*Id.* ¶ A). The Forbearance Agreement repeats this pattern not just with reference to parties and documents. The Agreement defines "monthly cash flow statement" (¶ 9(b)) and "cash flow" (¶ 11(b)). On the basis of this pattern, the parties have defined "Festival Income" as "all income generated by the Resort Properties in connection with hosting the 2008 Rothbury Music Festival" rather than by the explanatory phrase contained in the parentheses following the first use of the phrase "Festival Income."

Three phrases in the first few lines of paragraph 12 lend support to this conclusion. First, the parties have agreed that "all income" generated by the Resort Properties shall be used to make payments in a certain order of priority. The phrase "all income" is not a limiting one. There needs to be some limitation on the phrase "all income" in order for Defendants' interpretation of the Agreement to have merit.

Paragraph 12 does attempt some limitation on the phrase "all income." The paragraph

3

specifies that the income must be "in connection with the hosting of the 2008 Rothbury Music Festival." Unfortunately, this limitation provides little guidance. The Agreement does not identify how one would determine whether income was generated "in connection" with the Festival. Defendants would argue any revenue stream in place prior to the hosting of the Festival would not generate revenue "in connection" with the Festival. The Festival X Event Agreement specifies that Defendant Double JJ will "receive all revenues from its ordinary business on the Resort Property." (Dkt. No. 15-3, Exhibit B to Defendants' Motion - Festival X Event Agreement). However, it is impossible for this Court, on the basis of the record before it, to conclude the parties intended to exclude these revenue streams from Defendants' obligations under paragraph 12. Defendants have not suggested that those previously established revenue streams did not benefit from the Festival. Defendants would have difficulty establishing that the additional income generated in those already established revenue streams were not "in connection with the hosting of the 2008 Rothbury Music Festival."

Finally, the placement of the phrase "including, without limitation" undermines Defendants' interpretation of the Agreement. After defining "Festival Income" as "all income," paragraph 12 goes on to provide examples of the income that would be generated. That list of examples is preceded by the phrase "including, without limitation." The examples include revenue streams outlined in the Festival X Event Agreement: (1) Site Guarantee (¶ 2(a)), (2) Bonus (¶ 2(b)), and (3) Concession Revenue (¶ 2(c)). The use of the introductory phrase "including, without limitation" suggests the parties did not intend to limit "all income" to only those revenue streams created in the Festival X Event Agreement.

Defendants' second argument for modification of the Temporary Restraining Order, the

hardship imposed on their ability to pay vendors, is similarly unpersuasive. Defendants signed the Forbearance Agreement. This Court explicitly acknowledged this potential problem when it issued the Temporary Restraining Order. (Dkt. No. 2 - Order at 6). This Court considered the impact on vendors who are owed money relating to goods and services provided during the Music Festival and concluded they would be adversely affected. The impact on those third parties was not a sufficiently high enough concern to deny the motion, in part because of the temporary nature of the order.

Accordingly,

1. Defendants' Emergency Motion (Dkt. No. 14) to Modify Temporary Restraining Order is **DENIED.**

2. Defendants shall come into compliance with the terms of the Temporary Restraining Order forthwith.

**IT IS SO ORDERED.**

Date: July 15, 2008 (2:08 p.m.)                              /s/ Paul L. Maloney
                                                                                          Paul L. Maloney
                                                                                          United States District Judge